Ready to call our first case Children's Health Defense Inc. v. Rutgers. Counsel. Good morning. May it please the court. I'm Julio Gomez of Gomez LLC, attorney at law. I represent Children's Health Defense and the 13 students that challenged Rutgers COVID-19 vaccine mandate. I will refer to defendant appellees collectively as Rutgers, and I would respectfully request two minutes for rebuttal. Okay, that's done. Thank you. This appeal raises a very important question. Whether a college or university in New Jersey has the legal authority during a public health emergency to coerce a student's consent to a highly invasive injection of a yet to be fully investigated vaccine. Okay. When we meet in bank, we're all obligated to be quiet for five minutes and let people get things off their chest. But we're not doing that here today. And we've read your stuff. We understand basics. And I don't want to speak for my colleagues, but I got a lot of questions. So let's just go ahead and dive in if we can. All right. Sure. I want you to answer if you would just a point of clarification. The Rutgers said in its answering brief that none of the plaintiffs have received the vaccine and you're silent in your reply on that. When reviewing the amended complaint, it looks like Ms. Miller may have ended up getting it. I'm just curious, is it in fact the case that none of them were vaccinated except Ms. Miller? It's in fact the case that none of the students who are appearing on appeal have been vaccinated except for Jake Both. Jake Both? Oh, okay. Yes. Okay. Now, you make a great deal about this being a state action. And looking at our precedent, a case named Kovats, it looks like Rutgers sort of curious history has got it invested by state law as being virtually a private university. That is acting without, with practically no supervision from the state at all. Can you, if we read that as concluding that Rutgers governing boards are free to run this institution like a private university, how could we conclude that the vaccine mandate was ultra virus? If it's running as a private university? Right. I'm trying to address your ultra virus claim. The ultra virus claim is based on the argument that Rutgers authority to act in this sphere is limited by a delegation, an express delegation in the statute and in the regulation that it cites. So if Rutgers is a creature of state law, then it only has the power that had been granted. Right. But if that, if that power is to function effectively as a private institution with only the oversight that the boards have, aren't they in fact granted the kind of latitude that they're exercising? No, I don't think they are because the National Federation of Independent Business versus OSHA made clear that an agency has to have an express delegation and that the authority to mandate has to be clear. So, I mean, they have to have a laundry list, right? That means, doesn't it, that you have to have a statement that your, your authority is broad or that you're going to be board or that board, isn't that enough to give them the power to do? I mean, I take your ultra virus claim to be, they just had no power to do this. And I'm, I want you to engage with the idea, particularly in light of the governing structure that it's got, which is this unusual two board structure, which is, seems to be empowered to do everything that they in fact can do what they did. The state hasn't limited them in any way. Well, the state has expressly stated in the statute and in the regulation exactly what they can do. If I can go at this another way, if, to build on Judge Jordan's question, we held in Covats that because of its peculiar history and structure, Rutgers was not an arm of the state for purposes of 11th Amendment immunity. So if it's not an arm of the state and it's drawing its authority from sources that any private university would, then what relevance do those statutes have? Why is there any claim that their actions are ultra virus to their statutory authority? Well, they're ultra virus because the statute express how that authority is supposed to be expressed. The statutes express what Rutgers can or cannot do in the sphere. The statute says expressly that Rutgers is required to collect records of immunization. If Rutgers is required to collect records of immunization, what kind of records may it collect? It can't have, there can't be a situation where there's a statute that says it is required to do something, and yet Rutgers can completely avoid the dictates of that statute. Assuming, in other words, that it's a public university. Yes. Although we've said that it's not an arm of the state under the 11th Amendment. So how is it a public university in one context and not another? Well, it's a public university in this context because it's exercising or purports to be public health. In that sense, the Constitution says that the rights and the control of public health is going to... Would Princeton become a public university in that sense if it mandated it for all its students, even though it's indisputably a private university? Well, the Supreme Court said that the Constitution entrusts officials who are accountable to the people with this authority. Jacobson, Massachusetts, turned on the question that only those that are accountable to the people had the authority to mandate a vaccine in light of the constitutional rights that were involved. Okay, well, now that we're on Jacobson, I guess we'll go ahead and turn to that. So in light of the several cases which during the pandemic turned to Jacobson and viewed it as applying in effect rational basis review, why would we decide it's not? Can you come to grips with, including the Supreme Court's Justice Gorsuch saying in a concurrence look, it didn't use that language, that's language we developed later, but in effect it was applying a rational basis test. What's your response? Well, my response is that that concurrence has to be compared with the statement in Kruzan. In Kruzan, the court held, in majority opinion, that the test that Jacobson was employing was a balancing test. And we also have to be mindful of the fact that the time that Jacobson was decided, the tiers of constitutional scrutiny didn't exist at that time. Precisely. So I think Justice Gorsuch's point, we didn't, we hadn't developed that framework, but what they were doing was saying, look, this makes sense and we don't get in the way. I mean, you can make it, you can make a decent argument. That's sort of what seems to be the statement. You can make a decent argument for vaccine mandate for public health purposes, whether people like it or not for the public wheel, you go ahead and make people take it because it stops the transmission of disease. That's rational. So go ahead and let it happen. That seems to be what the case law coming out of COVID-19 looking back to Jacobson is saying. And I'm, I'm trying to understand why, why you think that's not a sensible reading of Jacobson. Well, it's not a sensible reading of Jacobson because the facts are different in our case. The facts in our case. The facts may be different in our case, but that doesn't say anything about what Jacobson was saying. In other words, I want to start at the foundation. Why isn't Jacobson? In fact, laying out a test, which in our modern parlance, we would say that's rational basis review. It's saying that you've got a sensible basis for what you're doing and we're not getting in the way of it because you're authorized to do that. Well, because I think Jacobson sets a higher standard. Jacobson says that it has to be real and substantial relationship. That doesn't sound like rational basis to me. That sounds like. I'm sorry. I didn't mean to cut you off. Go ahead. That sounds to me like a heightened, a more heightened, a more sensitive standard of review. Jacobson was dealing with a situation where you had a hundred year old vaccine. Jacobson was dealing with a situation where even that, the common consensus at the time was that an understanding at the time was that the prevention of the spread of the disease. We are living in, we were living in a much different and are still living in a much different situation. Let me ask you a question. Can you point to then a post Jacobson case where there's a vaccine mandate that has a religious and medical exemptions and the court has said this is subject to heightened or strict scrutiny? What's, what's that case? No, we can't, we can't point to such a case because there isn't such a case. And the reason there isn't, I believe what such a case is because most of the cases at this point have come to the courts on a preliminary injunction standard and that preliminary injunction standard allowed the courts to make decisions about the facts of those cases and the issue about transmission and the issue about controlling the spread of disease. We're at the pleading stage and at the pleading stage we haven't, we've alleged that these vaccines don't prevent spread and don't prevent transmission, but we've based that allegation on the pronouncements of the agency that was telling us exactly what these vaccines could or couldn't do. The Seventh Circuit had decided this on a preliminary injunction, but all the other circuits decided them on a motion to dismiss using the standard that was laid out in Jacobson and addressing the very same arguments that you make before us. Why should we diverge from their analyses at, even at a motion to dismiss stage? Well, I think you diverge from the analysis because we have a situation, we are at this point at the stage in the jurisprudence where the right to informed consent has changed since Jacobson versus Massachusetts. And that right to informed consent is now, has been pronounced deeply rooted in our nation's history. Could you address, there are a couple things that we highlighted asking you to be prepared to address. One goes to that informed consent provision and you're pointing to the federal provision that seems to be directed only to the Secretary of Health and Human Services and provides that any challenge as to its enforcement is to be brought by and in the name of the United States. So how is there a private right of action to raise this, at least framed as an informed consent claim? Well, we, what we've done in the complaint is slightly different. So what we've, what we've done is first and foremost, we have approached the situation from the point of view of the New Jersey regulatory provision, 8 colon 57 dash 6.4 C. And that requires that anything that Rutgers do be tethered to a recommendation of CDC's advisory committee practices. It just so happens that the recommendation of the ACP requires adherence to 21 U.S. code 360 PVP dash three. Our, our argument here is not that we brought a cause of action under the 21 U.S. code section 337 A. We brought a cause of action that under the statute, the state regulation, because Rutgers did not comply with the recommendation of the ACIP. So we haven't brought a private cause of action under federal law. We brought a private cause of action under state law. So in that sense, I, the 21 section 337 A doesn't foreclose the kind of claim that we've brought here today. What additional notice about the, the risks and benefits of the vaccine to you, are you alleging were not provided to students who, who got the vaccine and, and with it, whatever paperwork and pamphlets go along with the medication? Well, we're alleging is that in order for Rutgers to mandate anything with risk with their position is they can mandate because of the New Jersey regulation. The regulation allows them to mandate when ACIP recommends something. They can't have it both ways. They can say, well, ACIP recommended this vaccine, but within that recommendation, there is a requirement of adherence to the regular, the statute, which indicates that everyone needs to be given notice that they have the right to accept or refuse the vaccine. Weren't the students given that very notice they could refuse. And if they opted to refuse they had options for claiming an exemption, medical or religious or going online or attending a different university. Is it an unqualified right in your view? In our view, it's not an unqualified right, but it is a right that you have to be allowed to exercise freely without coercion. When we're talking about an emergency use authorized vaccine, that is a, that is an experimental vaccine. It is a vaccine that's still under clinical study and evaluation for safety. Under those circumstances, we're dealing with a vaccine that is potentially risky and dangerous. Has there been a change in the state of play on that? Are they, have the vaccines, two of them been authorized now by the FDA? Well, two were authorized or rather approved, approved by the FDA. That's correct. Those vaccines arguably were never available to the public. And for that reason, the FDA continued the emergency use authorization when those vaccines were approved. Now, the situation is that those vaccines are no longer available in the United States. In fact, they haven't been available in the United States since April 18th of this year. Since April 18th of this year, the only three vaccines that are available are the Pfizer and Moderna bivalent vaccines and the Novavax vaccine. Now, all three of those and all three of those are still considered quote unquote experimental by the FDA. So yes, there was a moment in time. That moment in time did not moot our case because you can't moot a case with a vaccine that isn't available. And even if it were at that time, it was very clear from that approval that the vaccine that was approved and the vaccine that was emergency use authorized was legally distinct. There were BLA requirements, for example, manufacturing the vaccine in particularly approved facilities. That makes those two vaccines not interchangeable. Okay. Let me, you're on our time now, so don't worry about the clock. You seem to argue that all the promises about reduced transmission were, you know, overblown, not accurate, not supported by available data, and that at most the vaccines might reduce the severity of disease, right? If I understood that argument correctly? Sort of. Okay. The implication of the argument is or seems to be that the benefit is an individual one and not a communal one. So the mandate really isn't for the public good. Have I understood you to be making that implication that that's an intended implication? Yes, that's an intended implication. Okay. Even if we thought it were true that the best these vaccines did was reduce severity of disease, and I know you're not accepting, but for purposes of this question, except we were taking a rational basis review, isn't there a rational argument to be made that by reducing the severity of disease, you prevent people from having to go to the hospital and you therefore relieve pressure on the public health system so that it can handle more severe cases? You understand what I'm trying to ask? I do understand what you're asking, Your Honor. That has to be balanced. According to the precedents that we have, that has to be balanced with the risk and safety to the individual who has to take it. Well, you're fighting my hypo, which is please accept for purposes of the question that we're under rational basis review. Is it not rational for a public health authority or a university to say, look, even if all this does is prevent you from getting sicker, that's important because we've got this pandemic raging and we don't want you in the hospital because if you're in the hospital, it means that some other person can't be in the hospital. So, take the vaccine. That's not rational because in your scenario, the state has no way to assess the risk that it would pose to adopt that approach because of the fact that these vaccines pose risks of adverse events, injury and possibly even death. It's not rational to say we're going to mandate a vaccine to reduce. So, your argument depends upon accepting that the risk, whatever it is, that you might get sick from the vaccine is as great or greater than the benefit of reducing severity of illness. That's correct. Does Jacobson allow us to consider that? I mean, for a court to decide which of two modes was likely the most effective for the protection of the public, for the protection of the public against disease. Yes, Jacobson does allow. Well, Jacobson allows it to the extent that we're not asking the court to make any sort of scientific assessment of efficacy or safety or transmission. Our allegation is based on what the agencies expressed that they knew at the time and know now. Those agencies expressed in their clinical documents and their approval and the approval letters that there was insufficient evidence about safety and risk and harm and in fact, even the most recent vaccines in the citations that court offered in its judicial notice letter, even those most recent announcements when the vaccines were licensed indicated that ongoing clinical study and post-marketing analysis for myocarditis and other issues had to continue. That may be, but doesn't Jacobson also tell us that the fact that belief is not universal is not controlling. It's not expected that that everyone, and even if there's the possibility that the belief may be wrong, that the science may yet show it to be wrong, that's not conclusive. That it comes back to the policymakers and those who are representatives of the people to make that determination about the reasonable and Rutgers is not accountable to the people. Rutgers is not in the position that the constitution offers those that are accountable to the people to make those kinds of decisions. Again, that's premised on your assertion that Rutgers is a state institution, not a private institution. I mean, maybe we should get this on the record. Would you concede that if you couldn't make that argument because Princeton, for the purposes of deciding what it's going to do with its student body and its faculty, is a policymaker, right? Right. Okay. Okay. Maybe just one last question for me. You're, you open your opening brief and hit it again right at the start of your reply with the argument that Rutgers and the district court failed to take your factual allegations as true, that at the 12B6 stage you're entitled to have them taken as true, and they didn't do that. Looking back at the underlying briefing on the motion to dismiss in the district court, it appears that Rutgers only took issue with two paragraphs in the first amended complaint, paragraph three and paragraph 319, and said that they were conclusory. I want to know from you, and maybe this is, you know, you don't know this off the top here, but are you aware of anything else where they looked at your complaint or your first amended complaint and said those are conclusory allegations not entitled to a presumption of truth? I'm not sure I followed. Well, there are, there was briefing on the motion to dismiss in the district court. In looking at that briefing, it appeared to me that there were two things that Rutgers took on specifically and said, hey, paragraph three and paragraph 319, I'll tell you what paragraph three says in essence. Paragraph three says basically Rutgers can't make medical decisions for its student by coercing them. Scholarships are at stake. The students can't attend college elsewhere. There's just not enough time to do that. A transfer would jeopardize their degrees. And 319 says that Rutgers policy of imposing restrictions and requirements on students who have received religious exemption denies such students equal protection of the law and says a little bit more beyond that. And in the briefing at the motion to dismiss stage in the district court, Rutgers did address those two things. It said, look, it's just those are effectively conclusory allegations not entitled to the presumption of truth. And I am wondering, you know, it's not a trick question. Have I missed something when I asked them the same thing? Did they say anything else in the district court about your brief being conclusory, the allegations being conclusory and not entitled to a presumption of truth? No, they did not. Let me ask you a follow-up question on that. When we're looking at the allegations of your complaint, to the extent that you rely on, refer to, reference, incorporate specific documents like the December 10th, December 20th FDA briefing, some of those things, can we look to those documents themselves? Yes. And to the extent that they contradict the allegation in your complaint, how do we address that? To the extent that they contradict the allegations in the complaint, I don't think that they do. But to the extent that they would, then the court would have the liberty to assess that contradiction. Okay, thank you. How would we, at that, you, you have made allegations essentially that the vaccine is, at least in its emergency use authorization status, is not safe or effective and that the, its harm outweighs any benefit such that it would survive even rational basis review, if I understand your argument correctly. Slightly different. The argument is that at the time that it's emergency use authorized, it cannot be known if it's safe or effective. It cannot be known if it prevents transmission, unless someone's actually testing for that. And so the decision about weighing benefit against risk is not ascertainable because of the stance in which that vaccine is. It's brand new, it's being clinically investigated. So it's very difficult at that stage for anyone to assess these things with certainty. Difficult isn't impossible, right? I mean, isn't the point here that when you're in a health emergency, you have to make, you have to make judgments. And, and the people who are empowered to make those judgments, now I recognize that that's a dispute, just leave that aside for a second, but the people who are empowered to make those judgments have to make them. And if they're, if they're making them in good faith, you know, that's the, that's the most we can ask. We can't ask for perfection. We can only ask for good faith efforts from people who have the power to do this. That's correct. You can only ask for good faith efforts. But in this particular situation, the facts are that Rutgers did not have the ability to exercise good faith because they didn't have the information to make that kind of an assessment. I think this is a hypothetical, I'm sorry, one last thing here. Doctors Gracias and Strom, I hope I'm saying those names right, they see, you look, if you look at their bios, they seem to be impressively credentialed people. Um, assume we weren't at the motion to dismiss stage, uh, that there was, uh, there was some limited discovery permitted and they came out and said, you know what, we're generally familiar with the medical state of play regarding the pandemic and the mandated vaccines. And we, we're issuing these because we believe that, uh, there is some non-trivial chance, some significant chance that they will benefit the student body, that they'll reduce transmission in some fashion. Uh, and, uh, therefore we're gonna, we're gonna require the vaccine. If, if they had, if that were evidence in the case and we were no longer relying solely on the allegations of the complaint, would, would, uh, would evidence like be sufficient to be, to meet a rational basis test? It would depend on how they came to that conclusion and what they reviewed and how they reviewed it to come to that conclusion, to test the good faith and the rationality of that decision. Okay. So we, we have, uh, in the complaint itself, um, and, uh, as something we might take judicial notice of, uh, the CDC's emergency use authorization criteria. And those criteria, um, say that the fact of them giving the emergency use authorization seems to, uh, reflect that based on totality of scientific evidence available to the secretary, uh, including data from adequate and well-controlled clinical trials, it's reasonable to believe that in this case, this vaccine may be effective in diagnosing, treating, or preventing a disease or condition. And that the known and potential benefits of the product outweigh the known and potential risks of the product where the, the secretary, where the CDC has made that determination. How can your, under Jacobson, how can your view that, uh, you're disagreeing with that, uh, that analysis, um, be sufficient, um, to state a claim? Because we're not agreeing with the analysis. We're saying that the very same statute that gave the secretary that authority also binds the secretary to permit that any recipient of the vaccine freely decide whether to accept or refuse it. Um, so the two go hand in hand. Uh, you can't have an emergency. We don't have a situation where there's an emergency authorization statute that gives the secretary that kind of authority and yet the rest of the statute is meaningless. So how was there not a choice here? This is, are you saying that there's a, um, a fundamental right for the students to attend this particular university in person? No, I'm not saying that there's a fundamental right to attend this university. I'm saying that there's a fundamental right for the the threat of not being able to attend the university imposes coercion. Um, and that coercion essentially eliminates or obliterates the right. Um, the student needs to be free to decide when we're dealing with that statute, whether to accept or refuse without any coercive element. I'm having a hard time following that argument because it sounds like what you're They've got a right to attend and you can't tell them they can't attend. If you define coercion as, uh, uh, you may not attend the university and therefore anything that threatens, uh, a mandatory withdrawal or removal from the university is if so facto unlawful coercion. Aren't you really saying, yeah, they got a right to attend period. Isn't that, I mean, you've used a lot more words, but isn't that what you're saying? They got a right and you can't take away period because if you try to take it away, that's coercion and it's unlawful and any consent they give is necessarily unlawful. That's correct. Okay. Yes. And what's your, what's the authority for, for that? Well, the authority for that is the statute itself. The statute says that you have to have, uh, be given the option to accept or refuse the vaccine. Um, the, uh, cases that you're, you're, your argument seems to be that you have the right to refuse it without any consequences. What's the authority for that? The authority for that are the cases that say that there is a fundamental right, uh, and that that right cannot be, uh, it should be a fundamental right should be regarded as a fundamental right. A fundamental right to attend Rutgers. A fundamental right to exercise the right to inform consent without coercion. Okay. Okay. Yes. All right. Thanks very much. Mr Gomez. We'll have you back on the bottle and we'll ask counsel for Rutgers to good morning. Your honors may please the court. Jeffrey Jacobson, Figury Drinker for Rutgers. I'm joined by john Hoffman, the general counsel of Rutgers. Judge Jordan, I can talk or we can get right into it. Well, good. Let's do get into it and we'll start with uh, uh, one of the last questions I was asking Mr Gomez and looking at the briefing below, it appeared to me that the only places where Rutgers said, hey, conclusory allegations in the first amendment complaint are paragraph three and paragraph 319. Uh, am I right about that? You're right, your honor. And, and let me just explain why you're right. You're right because Mr Gomez's challenges to the vaccine, all of his statements about it causes this risk has that risk. He's in the wrong building arguing to the wrong government officials in the wrong forum. Okay. Well, you can get to that in a minute, but I would like with that as a foundation, I just want to ask, um, why isn't he right about 12 B six when he says, um, hey, we're absolutely entitled to the presumption of truth for the allegations that we've made. Uh, we've, we've said that Rutgers has a conflict of interest. It's, uh, it's behavior is not in good faith. It's motivated by the money it makes from helping work on these vaccines. Um, uh, that's not, uh, a sound basis for decision. Don't let them get away with this. Those are some of the things that they've said. Uh, the argument isn't that it's conclusory and the district court never said that those sorts of allegations were conclusory. Um, given that we have a standard under 12 B six that says we have to accept those things as true. Why doesn't this get past the motion to dismiss stage? Because the one fact that's not in dispute, your honor, that ASAP, the federal advisory committee on immunization practices approved the vaccines and the regulation at issue says, quote, nothing in this subchapter shall be to establish additional requirements for student immunizations and documentation that such institution shall determine appropriate and which is recommended by the ASAP. Nothing else matters because Judge Montgomery Reeves got it exactly right. Jacobson said the rest of this is non justiciable. And what Judge Qureshi said about Rutgers supposed conflict is the ASAP recommendation demonstrates that Rutgers was acting pursuant to the ASAP's recommendation, which meant that all of the plaintiff's other allegations just didn't matter. Well, maybe we should take a step back. Jacobson was dealing with effectively legislative, uh, um, action. That is, the city council, uh, in Massachusetts was ordering something, um, or to health close enough. Yeah. Here we're here. We're dealing. We're dealing with some, some form of executive action, right? The Rutgers policy people, the Rutgers administration is making an, uh, uh, an assessment and is ordering something, correct? I don't agree with that, your honor, because the regulation made ASAP the decision maker. If ASAP recommended something Rutgers had the discretion to mandate it. ASAP is an arm of the executive of the federal government. Yes. Okay. So it's executive action. Yes. Pursuant to a congressional authorization, but yes. Yeah. But Congress didn't authorize some specific thing. Congress, as in all, I mean, by that definition, everything an executive did would be legislative because the legislature empowers the executive and the executive goes and acts, but we, we make differentiations between executive action and legislative action. Don't we? When, when it comes to judging whether something is, uh, uh, within the bounds of, um, uh, rational basis review, you know, your honor, I think what you're, the two decisions that the Supreme court decided on the same day, NFIB against OSHA and Biden against Missouri in one, in the FIB case, the regulatory agency acted beyond its congressional authority and in Biden v. Missouri, they didn't. And so here, I don't think there's really any dispute that the New Jersey legislature could empower the making of the regulation that allowed Rutgers to mandate a vaccine that was authorized by the ASAP. Well that, yeah, but, but they didn't record the, the New Jersey legislature didn't mandate that every Rutgers student get it. That's the point. Correct. Rutgers did it. And Rutgers was the first in the country to do it. And Rutgers did it before. When I say the first, I mean, it appears that it's the first university in the country, not even close your honor. Really? What other university mandated, uh, uh, all students had to be, whether they were off campus or not, all students, uh, had to be, um, I try to take issue with whether they were off campus or not, but your honor, there are hundreds of vaccine mandates around the country and Rutgers was not the first through the pandemic. Okay. That's well, that's my question. Who, who, who was, who was before him? I believe Indiana was before us in the Glasson case. I believe Indiana acted. I don't think Indiana was the first either. I don't, I don't know sitting here and it's not in the record of the case who was first, but it wasn't Rutgers. All right. Um, homing in on the, on the, the question of the difference between executive and legislative action. Uh, would you agree that, uh, cases like, uh, the census case, the Department of Commerce versus New York indicate that even when an executive's got authority to do something, if they don't give a rational explanation for it, if they don't give an explanation that holds up, it'll be struck down. Yes, but, but the ACE of providing the recommendation is itself the rational basis. And that it's different with the legislature because with the legislature, the law is the court itself can come up with the rationale. It can look and think of any possible rationale and say that statute can be upheld. But with executive action, the executive has to give the rationale, right? I mean, that's what the census case says. You didn't, you didn't justify it. And so you don't get it except I'm not sure which executive, I mean, if your honor is saying that the executive here is the ASAP, the ASAP provided an extensive explanation for why it authorized the vaccines. So, so, so we're clear. Are you on the underlying point? Are you conceding that there is a distinction between rational basis review of executive action and rational basis review of legislative action? Because in the former, the executive has to give the reason and it has to be sufficient. In the latter, the, the court can come up with the reason, even if the legislature didn't. Yes. Okay. So your argument is it was good enough for us to That was not what Rutgers said. And again, this is in the record Rutgers explanation for why it followed the ASAP recommendation is in the record and Rutgers provided its own reasons. I mean, we had to get our students back to campus. We had to get our, get our students back to a mode of in-person learning. And this was one critical tool in our toolbox to do it. I don't, and, and, And that's, I'm not suggesting that if we were past the motion to dismiss stage, that might be sufficient. I'm trying to get you engaged with their argument. The first argument they make in their opening brief and the very first argument they make in their reply brief is Rutgers won't engage with us on the standard, which is accept our assertions as true. Rutgers just, it won't engage with us on that. And we've said they didn't act in good faith. They're acting under a conflict. The real reason they're doing this is not because of the health of the students. It's for these other nefarious reasons. Now, you know, you can say that's hog but under Twombly and Iqbal, why aren't we required to, to, to give those assertions weight? Because you're bouncing around, Your Honor. And I've got to get you back to what ASIP said. The Rutgers is empowered to follow the author is it to follow the guidance of the ASIP, which is exactly what Rutgers did. Period. Full stop. All of Mr. Gomez is bouncing around going on here, but you're bouncing back and saying, trust us, we acted in good faith and relying on ASIP. I'm not saying they're saying that's not true. No, Your Honor. I was fighting back when you said that Rutgers simply said, well, ASIP, and that was the end of it. No, I am telling you. However, if Rutgers had said, well, ASIP, that would be sufficient. Okay. And, and how does that engage with their argument made in the complaint that you didn't just rely on ASIP. You relied on your own self-interest as an institution to further the aims of the vaccine manufacturers. That's, that's what I'm trying to do, Your Honor. I'm not asking about ASIP. But I'm, but I'm respond, Your Honor, I'm going to come back every single time to the regulation. Then, then maybe this isn't going to be to any good purpose because what you really want us to do is to ignore the No. Look, here's what, here's what Twombly says. It says, all the allegations of the complaint, even if of doubtful in fact, even if very remote and unlikely are things that should be, excuse me, this is Twombly, are things that have to be taken as true. Iqbal, the court said that the courts cannot refuse to presume factual allegations are true on the ground that they are unrealistic or nonsensical or because they are extravagantly fanciful in nature. In both those cases, the Supreme Court seems to be saying we don't care how wacky the assertions are. That's not why we're saying they're, they're conclusory and not entitled to be taken as true. They're only conclusory and not entitled to be taken as true if they dress up a legal assertion as a factual assertion. So you can say, and people around the country could look at what the plaintiffs are saying and say, that's wacky, that's fanciful, that's extravagantly fanciful in nature as the Supreme Court put it in Iqbal, but that doesn't matter. At the motion to dismiss stage, take it as true. Take it as true that the people at Rutgers are nefarious bad guys seeking to lie in their own pockets. Okay. Now you and a lot of people would say, well, there's just nothing to support that except your bare allegation. But at this point, their bare factual allegation is entitled to a presumption of truth, is it not? Your Honor. And please don't say, but it was ASIP, because I'm asking you about a statement in the complaint that you operated under a disabling conflict of interest. Right. So what they're saying is that because Rutgers participated in the clinical trials, that ASIP then based its recommendation on Rutgers has a conflict. What Judge Qureshi did was he looked at that and said, wait a minute. Okay. So Rutgers was one of many sites that participated in the trial. The data went to ASIP, ASIP made the recommendation, Rutgers followed the recommendation. So whatever conflict allegations the plaintiffs are making became irrelevant once ASIP made its recommendation. So I'm sorry that I have to keep coming back to it, but that's why Judge Qureshi said that the allegations of a financial interest don't matter because all of the data fed up to ASIP, which made its recommendation. All right. May I switch gears a bit and go back to where we started in terms of what is your response to whether we should think about Rutgers as a public entity when we have held that it is not for 11th Amendment purposes? So Your Honor, because this is a 1983 case, we figured that they were going to find a defendant to put in the caption subject to 1983. Rutgers is an instrumentality of the state that's been our position all along. When we were sued over having switched to a remote mode of education, those cases were brought in state court. Here, we didn't brief 11th Amendment below. Glasson didn't brief 11th Amendment that I'm aware of, and that case was decided in federal court. They can find some Rutgers defendant to bring here on a 1983 claim. So, you know, although I would take 11th Amendment immunity if the court wanted to grant it for these purposes, we were here on the assumption that they would be able to bring this claim against some Rutgers defendant in federal court. I believe I know the answer to this, but I just want to make sure I have your specific answer. What in the four corners of the plaintiff's complaint or the documents incorporated by the ACLU? The ACIP recommendation and the recommendation of public health authorities to follow the guidance and to get as many people vaccinated as possible. I mean, Rutgers, just, I mean, Justice Gorsuch said it in Calvary Chapel, where he said, you know, preventing the spread of COVID-19 was its own rational basis. I mean, so that it's the one thing that every court that's looked at this from the Supreme Court on down has assumed that the benefit of getting people vaccinated and getting back to normal was its own rational basis. Well, what's the rational basis that supported treating faculty and staff differently from students? Well, at the time that we imposed the student mandate, we had the regulatory authorization to do it. We didn't yet have a regulatory basis to mandate it for faculty. And explain that in a little more detail, would you? Well, the regulation... What changed? What changed was the... It's not coming to me, Your Honor, but there was a federal government shift. There was something with respect to an executive order coming out of the White House, right? It was something that President Biden said that... I believe that's correct. ...we shouldn't rely on, but you... So what you're saying is your rational basis was, in essence, what he said. We're what he said. Well, you don't have the faculty... The faculty are not before the court. This is a case by the students. I know that, but we're obligated to test your assertion that you were behaving... You had rational basis. And, I mean, you'd have to agree that in the world of viruses, the virus doesn't care whether you're a professor or whether you're a student. And so if you thought, oh my gosh, we have to do this to stop transmission, we have to make people get vaxxed to stop transmission, you know, the COVID-19 virus isn't making distinctions based on titles. I would say two things, Your Honor. The first is that the faculty were subject to collective bargaining. And so there was a whole... There's a whole different circumstance with regard to faculty and staff because we have collective bargaining issues with them. And second of all... That is a problem, but we're talking about rational basis to deal with the vaccine. Once again, the vaccine doesn't much care about union rules either, does it? Well, of course not, Your Honor. But the students also... The students are the ones living in the dorms. The students are the ones shoulder to shoulder with their fannies in the seats. And the professor is largely where you are. Okay. And back to the question of accepting things as true or not. You characterized what the district court judge did, but this is the language from page 15. This is appendix page 19 from the district court's opinion. It is for the legislature to determine what method of protection would likely be effective. It is for these similar reasons that Rutgers financial interests could not have played a role in the implementation of the policy. I'm having a tough time following that reasoning. It seems like what the district court is saying is if the legislature says what is and isn't effective, then it doesn't matter whether or not there was a conflict of interest. Am I reading that right? I don't think you are, Your Honor. Again, what I think Judge Qureshi was saying was that because the allegation in the complaint pertains to the clinical trials, and then the clinical trials went up to ASIP. Well, that isn't what he said. He said it's for the legislature to determine what method of protection would be effective. For similar reasons, Rutgers financial interests could not have played a role in the implementation of the policy. That just doesn't seem to follow. I mean, it's like saying my car is blue, therefore it will rain. Those two things, therefore, doesn't seem to be doing anything. If I could go back and have caused him to use slightly different language in that part of it because I had a feeling that I was going to be standing at this podium dealing with that line, I would have asked for a slightly different explanation. But at the end of the day, we're not saying that the allegations are ridiculous, although they are. I recognize that that's not the 12B6 standard. The 12B6 standard, however, is that there needs to be a connection between the factual allegation and the cause of action the plaintiffs are pleading. Are you asserting that the assertion that Rutgers was not acting in good faith because they had a disabling financial interest and that was what was driving it is not logically connected to the assertion that the mandate is not rationally based. It's in the sense of done in good faith for public purpose, that it is based not on the goodwill or not on the good health of the people, but on the good financial health of the university. That's their assertion and argument. Fanciful, extravagantly fanciful, it may be in the eyes of many people. That's their assertion. That's their argument. If we take it as true, why doesn't that get them past motion to dismiss and into the stage where you put your Dr. Garcia and I forgot, I've lost it, Dr. Strom, you know, you put some evidence in from them and then there's some foundation for saying, look, you don't, you know, you don't have any evidence of bad faith here unless they can develop it and we've got evidence of this and therefore you lose. Why doesn't the federal rules of civil procedure drive us to that point? Because of the answer that I gave to Judge Montgomery Reeves, your honor, which is this. Getting back to normal is its own rational basis. As the Supreme Court, all nine justices have held. The federal government and officials at the state level, the local level, the national level were all recommending get as many people vaccinated as possible. The statute authorized Rutgers to mandate any vaccine that the ASIP had approved. The ASIP approved this period full stop and so this issue about what Rutgers participated in the clinical trial does not change any of those core fundamental facts. All right. Anything else? Okay. Thank you. Thanks very much, Mr Jacobs. Well, your honor, Rutgers is trying to have it both ways and it's jumping around. It's saying that the rationale was get as many people as vaccinated as possible. If that's the rationale, then it can't explain why it drew the distinctions that it drew at the time that it did between the staff and the employees. Would you just like go right at the argument that Mr Jacobson was making for why your arguments about a disabling conflict of interest just don't have traction. They don't have traction because Rutgers was absolutely entitled to rely on ASIP. They said they were relying on ASIP. That should be the end of the matter. Well, then they should follow ASIP's requirement that you have to give the recipients the opportunity to say yes or no to the vaccine. So if you're going to follow the essay, if you're saying that the ASIP provides that. They did give them that. I mean, I understand your argument is they gave it to them on a condition and the condition made it not really a choice. Right. But if your best argument in response to their assertion that, you know, ASIP blessed it, therefore we're okay is they were going to kick us out of school, then it doesn't seem like you're actually answering their argument because we're not talking about informed consent right now. We're talking about rational basis. Is it enough for say ASIP said it to to achieve a rational basis for what they did in the face of the allegations of your complaint? No, it isn't enough to say that because of the nature of the vaccines. If the nature of the vaccines are that, as our facts say, it must be accepted as true, that they cannot stop the spread of vaccination, that they cannot stop the spread of the disease, then it's not rational to mandate that vaccine to stop the spread of the disease. Aren't you asking us to to say that your disagreement in in a complaint with the CDC's determination that the known and potential benefits outweigh the risk and that this particular vaccine, it may be effective, there's a reasonable basis to believe that in diagnosing, treating, or preventing the disease, that your your disagreement with that is sufficient as a matter of law to overcome a motion to dismiss? Because if given the opportunity to take this case to discovery, we would have an opportunity to assess the statement of the CDC and test it. Via Rutgers? How is how is deposing anybody from Rutgers going to expose anything that's in order to make your case you're entitled to third-party discovery from the CDC? Yes, I think we would be entitled to third. But doesn't that kind of undermine the assertion that you have made in your opening brief that you're only making the modest request? Let's see if I can find this because I thought this was an interesting quote in your opening brief. Um, I think you said, hey, we're not we're not really asking you to determine the most effective method to protect the public against COVID-19. The student's claim is more modest. They are asking this court to determine that an experimental vaccine whose safety and efficacy is not fully understood and has not been proved to prevent infection cannot be mandated to stop disease. So, so what you're saying is you really, you really do want to put the vaccine itself on trial here, not Rutgers, not Rutgers decision-making. You want, you want to put the vaccine on trial. We don't want to put the vaccine on trial, but we have the right to question the CDC. Okay, I got it. No, I think I understand your position. Um, anything? Okay. Thanks, Mr. Gomez. Thank you, Mr. Jacobson. Appreciate everybody being here. We've got the matter under advisement.